UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MILRO SERVICES, INC.,

                                                      07 CV 11377

              Plaintiff,

      -against-                         **JOINT PRE-TRIAL ORDER**

ELIZABETH ARDEN SPAS LLC d/b/a
RED DOOR SPAS,

              Defendant.
------------------------------------------------------------X

      The parties, by and through their respective attorneys, hereby submit the following Pre-Trial Order, pursuant to the Court's Case Management Order and Individual Practices:

1.    Estimated Length of Trial:

       Plaintiff:    2 days

       Defendant:   2 days

2.    Undisputed Facts:

    (a)   Plaintiff Milro Services, Inc. ("Milro") is engaged in the business of providing emergency clean-up and restoration services.

    (b)   Defendant Elizabeth Arden Spas, LLC, ("Arden") is engaged in the beauty salon and health spa business and maintains a place of business located at 691 Fifth Avenue, New York, New York (the "Spa").

    (c)   Milro was retained by Defendant Elizabeth Arden Spas, LLC, ("Arden") to perform clean-up services following a fire at premises rented by Arden at 691 Fifth Avenue, New York, New York.

 (d) On January 13, 2007, a fire broke out on the 8th floor of the Spa causing fire, smoke and water damage.

 (e) On January 13, 2007, Arden contacted Custard Insurance Adjusters, Inc. ("Custard"), regarding the fire, smoke and water damage at the Spa.

 (f) On or about February 5, 2007, Milro submitted an invoice for $332,551.40.

 (g) Arden's insurer for fire, Nutmeg Insurance Company ("Nutmeg"), advised Milro on October 8, 2007, that it needed further information documentation to support the invoice balance of $124,551.40.

 (h) On November 14, 2007, Nutmeg advised that it would "entertain reasonable costs" for Milro's services if it received "supporting documentation."

 (i) The invoice submitted by Milro was disputed by Arden and documentation supporting the amount of the invoice was requested.

3. <u>Plaintiff's Contention of Facts</u>:

 (a) On January 13, 2007, at approximately 7:00 p.m., Milro's Field Consultant, Scott Massaro ("Massaro"), and a clean-up crew arrived at Defendant's Spa.

 (b) Massaro met Richard Bloom ("Bloom") who identified himself as Arden's Director of Facilities.

 (c) Bloom stated to Massaro that Arden needed an immediate emergency

clean-up of the recent fire, smoke and water damage because the Spa was completely booked for guest services and would suffer significant business income loss should the Spa remain closed.

(d) Milro agreed to perform the work and agreed to accept compensation on a time and materials basis.

(e) Bloom signed an authorization stating authorizing Milro to begin the necessary restoration work.

(f) Milro began work the very same day, January 13, 2007.

(g) On January 13, 2007, and again on January 15, 2007, Milro and its agents, including an insurance adjuster from Custard, whom Defendant represented to Milro was working on Defendant's behalf, agreed to the retention and payment of Milro.

(h) The authorization signed by Bloom also directed Custard to pay Milro for the restoration work and further assigned Arden's rights to insurance indemnification to Milro.

(i) Milro relied upon Bloom's instructions, and the written authorization signed by Bloom, in deciding to begin performing of the necessary restoration work.

(j) Milro's crews worked continuously, around the clock, from shortly after Massaro's arrival on January 13, 2007 through January 15, 2007, performing the restoration work.

(k) On January 15, 2007, Milro Vice President, Kevin Molloy ("Molloy") met

3

       with Scopes, Bloom, Theresa McKee ("McKee"), Arden's Vice President of Operations, Patrick Dooley ("Dooley"), Arden's Vice President of Design & Construction, Louis Paduano ("Paduano"), Arden's Director of Design & Construction, Rebecca Matthews ("Matthews"), Arden's Guest Services Specialist, Steve Puleio ("Puleio"), Arden's Insurance Agent, and Niles Llola ("Llola"), Property Manager for Vornada Office Management, LLC to determine a further course of action for the clean-up and restoration of the Spa.

(l)    During this January 15, 2007 meeting, the parties, inspected the damages from the fire and Molloy defined the scope of additional work to be performed by Milro.

(m)    During this January 15, 2007 meeting, Bloom stated to Molloy that Arden wanted Milro to continue continuous, around the clock performance of the restoration work to avoid any further business interruptions.

(n)    During this January 15, 2007 meeting, Bloom asked Molloy to project Plaintiff's costs.

(o)    On January 15, 2007, Milro provided Defendant an estimated total price of $400,000.00 to $450,000.00 for completion of all restoration work.

(p)    From January 13, 2007 to January 19, 2007, Milro, together with its subcontractors, worked around the clock and performed all of the agreed upon cleanup restoration work at the Spa, from the time shortly after Milro's Field Consultant Massaro arrived at the Spa through completion of

all work to Arden's satisfaction.

(q) Arden expressed to Milro its complete satisfaction with Milro's work.

(r) On or about February of 2007, Milro presented Arden with a billing statement reflecting $332,551.40 due, an amount tens of thousands of dollars below the estimated costs that Defendant had agreed to pay, based upon the time and materials for the restoration services provided.

(s) The billing statement included a ten (10) page break-down of the items that went into the calculation of the total costs of $332,551.40.

(t) On or about February 5, 2007, Arden's insurance company, Nutmeg Insurance Company, paid Milro $200,000.00 toward the aforementioned billing statement leaving a balance of $132,551.40.

(u) Defendant, and its insurance company, asserted that Milro was only entitled to payment on a "square footage basis."

(v) Although Milro disputes that a square footage basis should be used to calculate its payment for the services performed, even using Defendant's proposed payment calculation method, Milro would be entitled to in excess of the amount of its bill.

(w) Because other construction was taking place while Milro performed its restoration work, and because of the nature of the fire, smoke and water damage that Milro had to repair, Milro was required to clean many areas of the Spa up to three (3) separate times.

(x) Despite demands by Milro, Arden Defendant has not paid Milro the

balance due under the aforementioned billing statement.

Defendant's Contention of Facts:

Milro commenced work on the subject project subsequent to the execution of an authorization which did not contain a price for the work to be performed by Milro, stated that will be paid "the value of said services," authorized and directed "Custard Insurance" to pay Milro, and contained no other material terms and conditions. Plaintiffs contend that the cost of the clean-up and restoration was to be determined on a time and materials basis. The time and materials pricing is an approach to pricing used by service businesses in which the total billing is composed of actual direct materials and parts cost, actual direct labor cost, plus a percentage markup of each to cover overhead costs, and a profit factor. After completing the job, Milro submitted an invoice in the amount of $332,551.40. Milro was paid $208,000 and the remaining balance was disputed by Elizabeth Arden as not supported by the documentation. Documentation was requested prior to the commencement of this action and again during the course of discovery to support plaintiff's invoice price and specifically the labor costs which total in excess of $180,000 for six days of work.

In response to Elizabeth Arden's demand for documentation supporting all costs for the subject project, Milro provided canceled checks, which they represented include all costs, including payroll costs, for the subject project, totaling $117,009.89. In defendant's experience, the industry standard profit margin for a job such as this is, is approximately twenty percent (20%). Based

upon plaintiff's costs and the amount billed, plaintiff is attempting to recover a profit of $215,541.71 which is almost a two hundred percent (200%) profit margin. Since plaintiff has failed to produce any documentation supporting the alleged material or labor costs, Elizabeth Arden, in consultation with its insurer, Nutmeg Insurance Company, paid Milro the value it estimated, based on industry standard, for a clean-up of this nature. Based on plaintiff's supporting documentation plaintiff has earned a $91,000 profit on this job, consisting of the $208,000 it received in payment minus the approximately $117,000 in costs for the job.

4. <u>Plaintiff's Contention of Law with Citations</u>:

    Milro contends that Defendant's agents had apparent authority to enter into a contract with Milro based upon Defendant's actions and statements to Milro. <u>See</u> <u>Indosuez International Finance B.V. v. National Reserve Bank</u>, 98 N.Y.2d 238 (2002). Accordingly, Milro contends that an actual contract was formed between Milro and Defendant in which Milro was to perform emergency, round-the-clock restoration services to repair the fire, smoke and water damage at Defendant's Spa and in which Defendant was to pay Milro an amount reflecting the value of the services rendered on a time and materials basis.

    Alternatively, Milro contends that Defendant is required to pay the amount represented by the balance due and owing to it from Defendant based upon Defendant's unjust enrichment (<u>see</u> <u>Smith v. Chase Manhattan Bank</u>, 741 N.Y.S.2d 100 (2d Dept. 2002).

5. <u>Defendant's Contention of Law with Citations</u>:

No statute is relevant to the outcome of this dispute. Plaintiff will have the burden of proof of establishing the amount of damages resulting from defendant's alleged breach of contract. *J.R. Loftus, Inc. v. White*, 85 N.Y.2d 874, 877, 626 N.Y.S.2d 52, 649 N.E.2d 1196 [1995]; *City of New York v. State of New York*, 27 A.D.3d 1, 4, 801 N.Y.S.2d 8, 11 [2005]; *Ashton v. McLenithan*, 224 A.D.2d 749, 751, 636 N.Y.S.2d 936 [1996]. Defendant contends that plaintiff has not provided adequate evidence establishing their entitlement to the amount charged for the services provided.

6. <u>Plaintiff's Witness List</u>:

| | |
|---|---|
| Michael Curry - | President, Plaintiff |
| Kevin Molloy - | Vice President, Plaintiff |
| Scott Massaro - | Field Consultant, Plaintiff |
| Richard Bloom - | Employee of Defendant |
| Theresa McKee - | Employee of Defendant |
| Steve Puleio - | Defendant's Insurance Broker |
| John Scopes - | Defendant's Insurance Claims Adjuster |
| Boris Loncarevic - | Defendant's Insurance Claims Adjuster |
| Dennis DeMillo - | Defendant's Insurance Claims Adjuster |
| Niles Llolla - | Vornado Office Management, LLC |

<u>Defendant's Witness List</u>:

Frank Mattos
Andrea Matott

8

7.   Exhibit Lists:

<u>Plaintiff's Exhibits</u>:

A.   Plaintiff Authorization Form signed by Bloom on behalf of Defendant dated January 13, 2007

B.   Letter dated January 17, 2007 from Scopes to Gallagher Basset Services, Inc.

C.   Invoice of Cunningham Duct dated January 20, 2007

D.   Letter dated January 19, 2007 from Michael Curry ("Curry") President of Plaintiff to Dennis Dimillo ("Dimillo") of DBI Construction Consultants with enclosures

E.   Plaintiff invoice dated February 5, 2007

F.   Various e-mails between Frank Mattos ("Mattos") of Servpro, Molloy, Steve Puleio ("Puleio") and Boris Loncarevic ("Loncarevic") of VeriClaim, Inc.

G.   Mold End-Point Testing Report of Envirospect dated February 8, 2007

H.   Letter dated February 18, 2007 from Curry to Frank Mattos ("Mattos") of Servpro

I.   Letter dated April 10, 2007 from Curry to Loncarevic with enclosures

J.   Daily Humidity Records maintained by Plaintiff

K.   Plaintiff payment authorization to Luminous Cleaning Services ("Luminous") dated 1/25/07

L.   Plaintiff check to Luminous dated 1/25/07 in the amount of $2,540.00

M.   Plaintiff check to Luminous dated 2/2/07 in the amount of $5,440.00

N.   Plaintiff check to Luminous dated 2/15/07 in the amount of $3,412.50

O.   Plaintiff check to Luminous dated 2/28/07 in the amount of $4,000.00

P.  Plaintiff check to Luminous dated 3/23/07 in the amount of $2,812.00

Q.  Cunningham Invoice dated 1/20/07

R.  Plaintiff check to Cunningham dated 2/15/07 in the amount of $12,000.00

S.  Unlimited Rubbish Removal Invoice (undated)

T.  Plaintiff check to Unlimited Rubbish Removal dated 2/15/07 in the amount of $7,725.00

U.  MAS Environmental Services, Inc. Invoice dated 1/15/07

V.  Plaintiff check to MAS Environmental Services, Inc. dated 2/8/07 in the amount of $14,697.50

W.  Plaintiff check to Nasio Cleaning Services, Inc. dated 2/22/07 in the amount of $9,804.50

X.  Envirospect invoice dated 2/5/07

Y.  Plaintiff check to Envirospect dated 3/22/07 in the amount of $7,125.66

Z.  Nasio Cleaning Services, Inc. ("Nasio") invoice

AA. Plaintiff check to Nasio dated 5/24/07 in the amount of $14,645.00

BB. Nasio invoice dated 1/27/07

CC. Plaintiff check payable to Nasio dated 2/8/07 in the amount of $6,536.00

DD. Plaintiff payable to Nasio dated 1/25/07 in the amount of $10,247.50

EE. Plaintiff check payable to Nasio dated 1/18/07 in the amount of $16,024.03

FF. Luminous invoice (undated)

GG. Luminous invoice (undated)

HH. Luminous worksheet (undated)

Defendant's Exhibits:

(a) Authorization to begin work, executed by Rick Bloom of Elizabeth Arden.

(b) Milro's Invoice dated February 5, 2007

(c) Canceled checks payable to Nasio Cleaning Services, Inc. totaling $57,257.23

(d) Canceled checks payable to Luminous Cleaning Corp. totaling $18,204.50.

(e) Canceled check payable to Unlimited Rubbish Removal, Inc. totaling $7,725.00.

(f) Invoice of Unlimited Rubbish Removal, Inc. for work performed on January 7, 2007 for $6,000.00

(g) Canceled check payable to M.A.S. Environmental Services, Inc. totaling $14,697.50.

(h) Invoice of M.A.S. Environmental Services, Inc. dated January 15, 2007 totaling $5,585.00.

(i) Canceled check payable to Cunningham Duct Cleaning Co. totaling $12,000.00.

(j) Invoice of Cunningham Duct Cleaning Co. dated January 20, 2007 totaling $32,000.00.

(k) Employee sign in sheets for Nasio Cleaning Service, Inc.

(l) Employee sign in sheets for M.A.S. Enviromental Services, Inc.

(m) Employee sign in sheets for Luminous Cleaning Service, Inc.

(n) The entire claim file maintained by Nutmeg Insurance Company for the subject dispute.

(o) Letters from plaintiff's counsel attaching "supporting documentation".

Dated: June 30, 2008

STEINBERG, FINEO, BERGER & FISCHOFF, P.C.

By: *Joseph Nocella*
    Francis C. Fineo, Esq.
    Joseph Nocella, Esq.

Dated: June 30, 2008

MELITO & ADOLFSEN P.C.

By: /S/
    Louis G. Adolfsen, Esq.

F:\docs\Milro Associates\Milro Services\Elizabeth\v3.PRE-TRIAL ORDER.wpd